W. MICHAEL GARNER, P.A.
230 Park Avenue
10th Floor
New York, NY  10169
Telephone:  (212) 551-1432
Facsimile:  (612) 259-4810
wmgarner@franchisedealerlaw.com
W. Michael Garner (WG3558)

       and

DADY & GARDNER, P.A.
80 South Eighth Street
5100 IDS Center
Minneapolis, MN  55402
Telephone:  (612) 359-3515
Facsimile:  (612) 359-3507
Ronald K. Gardner (MN # 248797)

Attorneys for Petitioners
Triomphe Partners, Inc.,
Triomphe Partners, LLC, and
Triomphe Luxembourg, S.a.r.l.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————x

TRIOMPHE PARTNERS, INC.,
TRIOMPHE PARTNERS, LLC, and                Case No. 10-CIV-8248 (PKC)
TRIOMPHE LUXEMBOURG, S.a.r.l.,            ECF Case

                Petitioners,

against

REALOGY CORPORATION

                Respondent.

———————————————————x

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.     Introduction ................................................................................................... 1

II.    Background Facts ............................................................................................ 2

III.   Argument ........................................................................................................ 7

       A.    Standard of Review ............................................................................. 7

       B.    The Tribunal Refused to Hear Evidence Pertinent and
             Material to the Controversy. .............................................................. 8

IV.    Conclusion ................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Cases**

*Gulf Coast Indus. Workers Union v. Exxon Co., USA*, 70 F.3d 847 (5th Cir. 1995) ...................... 9

*Hoteles Condado Beach v. Union De Tronquistas Local 901*, 763 F.2d 34 (1st Cir. 1985) ...... 8, 9

*Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997) ...................................................... 8

*Woodco Mfg. Corp. v. G.R. & R Mfg., Inc.*, 51 A.D.2d 631 (N.Y. App. Div. 1976).................... 11

**Statutes**

9 U.S.C. § 10(a)(3)........................................................................................................ 1, 7, 8, 11

9 U.S.C. § 10(b) ...................................................................................................................... 12

**MEMORANDUM IN SUPPORT OF PETITION TO
VACATE ARBITRATION TRIBUNAL'S FINAL AWARD
PURSUANT TO THE FEDERAL ARBITRATION ACT, 9 U.S.C. § 10**

Petitioner Triomphe Luxembourg, S.a.r.l.[1] ("Petitioner"), by and through its attorneys, submits this Memorandum in Support of its Petition to Vacate the American Arbitration Association's International Arbitration Tribunal of the International Centre for Dispute Resolution (the "Tribunal") final award, dated August 4, 2010 (Case No. 50 114 T 00041 08), made in the City of New York, State of New York (the "Final Award").

## I.  Introduction

The nearly ten year history between Petitioner and Respondent Realogy Corporation ("Respondent") is long and complicated, but the issue before this Court is simple.  Should this Court vacate the Final Award due to the Tribunal's refusal to hear evidence on the most pertinent and material issue between the parties, while basing its Final Award solely on the lack of evidence on this very same issue?  The answer is yes; this type of misconduct requires this Court to vacate the Final Award.

Pursuant to Section 10(a)(3) of the Federal Arbitration Act ("FAA"), courts are authorized to vacate arbitration awards "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, *or in refusing to hear evidence pertinent and material to the controversy*."  9 U.S.C. § 10(a)(3) (emphasis added).  This type of misconduct is exactly what happened here.

---

[1] While Respondent's Demand for Arbitration named Triomphe Partners, Inc. and Triomphe Partners, LLC, the real party in interest to the Agreements between Petitioners and Respondent (and the arbitration) was Petitioner Triomphe Luxembourg, S.a.r.l.  Indeed, Triomphe Partners, Inc.'s interest in the Greater Europe Agreement (defined below) was assigned to Triomphe Luxembourg, S.a.r.l. in 2001.  Additionally, on the same date, Triomphe Partners, LLC also assigned its interest in the Eastern Europe/Scandinavia Agreement (defined below) to Triomphe Luxembourg S.a.r.l.

In its Final Award, the Tribunal found in favor of Respondent and against Petitioner due solely to the lack of any "credible" evidence demonstrating that Petitioner was, at the time of termination, in the process of curing its purported breach of contract. The only reason, however, that no evidence was introduced showing Petitioner was in the process of curing was because the Tribunal prevented Petitioner from doing so.

This type of misconduct—refusing to hear evidence relating to a pertinent and material issue to the controversy, while basing the ultimate award on the lack of any such evidence—is precisely the type of misconduct prohibited by the FAA. Accordingly, due to the Tribunal's misconduct, Petitioner respectfully request that, pursuant to 9 U.S.C § 10(a)(3), this Court vacate the Tribunal's Final Award.

## II.  Background Facts

Petitioner and Respondent were parties to two written agreements, one executed on or about November 5, 1999, and the other executed on or about July 24, 2000 (collectively, the "Agreements"). True and correct copies of the Agreements are attached as **Exhibits 1 and 2** to the Affidavit of Ronald Gardner. The Agreements granted Petitioner an exclusive license to develop and sublicense Coldwell Banker® franchised locations in Greater Europe and in Eastern Europe/Scandinavia.

## Respondent Terminates the Agreements and Files a Demand for Arbitration

After operating pursuant to the Agreements for nearly eight years, Respondent, on or about December 4, 2007, unilaterally terminated both of the Agreements. Shortly thereafter, on or about February 1, 2008, Respondent filed a Demand for Arbitration with the American Arbitration

---

During the arbitration, there was no dispute that Triomphe Luxembourg S.a.r.l. was the real party in interest. In order to

Association seeking:  (1) a declaration that Respondent was justified in terminating the Agreements due to Petitioner's purported breach of eleven different sections of the Agreements, including Petitioner's alleged failure to comply with the minimum quota requirements set forth in Section 5.I of the Agreements; and (2) an award of damages resulting from Petitioner's purported breach of the Agreements.  A true and correct copy of Respondent's Demand for Arbitration is attached as **Exhibit 3** to the Affidavit of Ronald Gardner.

On or about February 29, 2008, Petitioner filed an Answer and Counterclaim:  (1) denying all of the allegations set forth in the Demand for Arbitration; (2) raising a number of affirmative defenses; and (3) bringing four counterclaims asserting, among other things, that Respondent wrongfully terminated the Agreements by failing to comply with Section 13.A(i), which, required Respondent to extend the cure period for as long as reasonably necessary to afford Petitioner a fair opportunity to cure the alleged breach.   A true and correct copy of Petitioner's Answer and Counterclaim is attached as **Exhibit 4** to the Affidavit of Ronald Gardner.

**The Arbitration Hearing Commences and The Tribunal Commits Misconduct.**

The arbitration hearing commenced on July 7, 2009, and, due to scheduling difficulties with the parties, their counsel, and the Tribunal, continued on and off until the Tribunal heard closing argument from the parties on May 27, 2010.

Over the course of these nearly eleven months, the main issue for resolution was whether Respondent's termination of the Agreements was wrongful.  Respondent alleged it had the right to do so, given Petitioner's purported breaches.  While Petitioner, on the other hand, argued that Respondent's termination was wrongful because there was no breach, and, even if there was,

---

avoid any dispute, Petitioner has included Triomphe Partners, Inc. and Triomphe Partners, LLC in the caption.

Respondent breached the Agreements by terminating Petitioner while it was in the process of curing the alleged breach. *See* Agreements at § 13.A(1) (preventing Respondent from terminating the Agreements while Petitioner was in the process of curing a breach).

Petitioner had originally planned to establish that it was in the process of curing the alleged breach by having Wayne Vandenburg, Petitioner's Chief Executive Officer, testify as to Petitioner's efforts to sell or acquire additional locations in Greater Europe, Eastern Europe and Scandinavia in order to meet the minimum quota requirement set forth in Section 5.I of the Agreements. Given that Mr. Vandenburg would be testifying, and the fact that all of the individuals and corporate representatives he spoke with were located outside the United States, Petitioner did not include the names of the individuals or corporate representatives on its witness list. Over the course of the hearing, however, the Tribunal made it clear that it did not consider Mr. Vandenburg's testimony, alone, to constitute sufficiently credible evidence on Petitioner's efforts to cure.

Given this unexpected course of events, Petitioner was forced to locate additional evidence to establish that Petitioner had, in fact, acted diligently in its efforts to cure the purported breach related to the minimum quotas set forth in the Agreements and, as a result, proven that Respondent's termination of the Agreements was wrongful.

To do so, during the course of a few days during the hearing, Petitioner collected eleven declarations, signed under penalty of perjury, from the individuals with whom Petitioner had discussed the potential to open or acquire additional franchised locations throughout Greater Europe and Eastern Europe/Scandinavia (the "Declarations"). True and correct copies of the Declarations are attached as **Exhibit 5** to the Affidavit of Ronald Gardner. The Declarations demonstrated that

Petitioner had been discussing potential business relationships with the declarants in an effort to meet its minimum quota requirements.  Shortly after obtaining the Declarations, Petitioner provided copies of the Declarations to Respondent's counsel, and the next day Petitioner offered to introduce the Declarations during the arbitration hearing.

Even though Petitioner had only recently obtained the Declarations, which were directly related to the most material issue in the arbitration (*i.e.*, whether Respondent had terminated the Agreements while Petitioner was in the process of curing the purported breach), Respondent's counsel objected to the introduction of the Declarations because the Declarations were included on Petitioner's exhibit list, but the individual declarants were not on Petitioner's witness list.

In raising this objection, Respondent apparently chose to ignore its previous conduct during the arbitration.  Indeed, after the hearing had been underway for approximately seven months, Respondent attempted to introduce a rebuttal expert report and have the rebuttal expert testify at the hearing.  Despite the fact that the rebuttal expert was not on the witness list and his report was not on the exhibit list, the Tribunal allowed Respondent to introduce the rebuttal expert report and granted Respondent permission to allow the rebuttal expert to testify.  A true and correct copy of the portion of the hearing transcript where the Tribunal allowed for the introduction of Respondent's surprise rebuttal expert is attached as **<u>Exhibit 6</u>** to the Affidavit of Ronald Gardner.

When Petitioner attempted to introduce the Declarations, the Tribunal summarily refused to hear the evidence, failed to delay the hearing to mitigate any potential unfair surprise or prejudice to Respondent, and instructed Petitioner's counsel to proceed with the questioning.  A true and correct copy of the portions of the hearing transcript related to the attempted introduction of the

Declarations, and the Tribunal's refusal to do so, are attached as **Exhibit 7** to the Affidavit of Ronald Gardner.

**The Tribunal Issues its Final Award.**

On or about August 4, 2010, the Tribunal issued its Final Award.  A true and correct copy of the Final Award is attached as **Exhibit 8** to the Affidavit of Ronald Gardner.  In its Final Award, the Tribunal denied all of Respondent's claims except for the breach of contract claim related to the minimum quota requirements set forth in Section 5.I of the Agreements, finding that Petitioner breached the Greater Europe Agreement and the Eastern Europe/Scandinavia Agreement "due solely to [Petitioner's] failure to meet the Minimum Quota Requirements."  *See id.*

Because Section 13.A(i) of the Agreements prevented Respondent from terminating the Agreements, so long as Petitioner was undertaking efforts to cure any purported breach, the Tribunal was also required to make findings related to Petitioner's efforts to cure prior to determining the propriety of Respondent's termination of the Agreements.

Despite denying Petitioner the opportunity to introduce evidence demonstrating that Petitioner was working diligently to cure the purported breach of the minimum quota requirements, the Tribunal found that Petitioner had failed to produce any evidence of Petitioner's efforts to cure the purported breach.  As such, the Tribunal found that Respondent's termination of the Agreements was not wrongful and denied each of Petitioner's counterclaims.

Had the Tribunal acted properly and admitted the Declarations into evidence, the sole basis for the Tribunal's finding that Respondent's termination was justified (*i.e.*, there was no evidence that Petitioner was curing the alleged breach) would have been unavailable, and the Tribunal could

not have denied Petitioner's counterclaims.

### III.  Argument

As more fully set forth herein, the FAA authorizes courts to vacate final arbitration awards under the circumstances set forth in Section 10(a) of the FAA.  Here, this Court should vacate the Final Award due to the Tribunal's misconduct in:  (1) refusing to hear evidence pertinent and material to Petitioner's efforts to cure the alleged breach of the Agreements; and (2) failing to delay the hearing to allow for the introduction of the same pertinent and material evidence.

### A.  Standard of Review

Although a court's review of an arbitration award is, admittedly, limited, there are certain circumstances under which a reviewing court can, and should, vacate an arbitration award—those circumstances expressly set forth in Section 10 of the FAA.

In relevant part, Section 10 of the FAA provides as follows:

[T]he United States court in and for the district wherein the award was made may make an order vacating the [arbitration] award upon the application of any party to the arbitration –

\* \* \* \* \* \* \* \*

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

9 U.S.C. § 10(a)(3).

In this case, Petitioner respectfully requests that this Court vacate the Final Award due to the Tribunal's misconduct in refusing to hear evidence pertinent and material to the controversy and, alternatively, in failing to postpone the hearing to allow for the introduction of the same pertinent and material evidence.

**B.  <u>The Tribunal Refused to Hear Evidence Pertinent and Material to the Controversy</u>.**

In its Final Award, the Tribunal concluded that, because there was no evidence of Petitioner's efforts to cure the purported breach of Section 5.I of the Agreements, Respondent was justified in terminating the Agreements.  The only reason the Tribunal was able to reach such a conclusion, however, was because the Tribunal refused to hear evidence demonstrating Petitioner's efforts to cure the purported breach.  Refusing to hear this evidence was misconduct, and, as a result, this Court should vacate the Tribunal's Final Award.

This Court has the express authority to vacate a final arbitration award in situations where the arbitrators refuse to hear evidence that was pertinent and material to the controversy between the parties.  9 U.S.C. § 10(a)(3).  While an arbitrator may not be required to hear every piece of evidence proffered by a party, an arbitrator is required to "give each of the parties to the dispute an adequate opportunity to present its evidence and argument."  *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (vacating an arbitration award where the arbitration "panel excluded evidence plainly pertinent and material to the controversy") (quoting *Hoteles Condado Beach v. Union De Tronquistas Local 901*, 763 F.2d 34 (1st Cir. 1985)).

For example, in *Hoteles Condado Beach*, a hotel terminated one of its employees for allegedly offensive conduct toward a guest.  763 F.2d at 36.  The former employee filed an arbitration action claiming that the hotel wrongfully terminated him.  *Id.*  Because the only witness to the offensive conduct was unavailable, the hotel attempted to introduce a written transcript containing the unavailable witness's prior testimony discussing the specifics of the employee's offensive conduct.  *Id.* at 37.  The arbitrator, however, refused "to give the transcript any weight in

rendering his award, and concluded that the [hotel] had failed to submit sufficient evidence to prove that the [hotel] was justified in dismissing [its employee]." *Id*. at 39. The hotel moved to vacate the arbitration award based on, among other things, the arbitrator's refusal to give any weight to the evidence. *Id*. at 37. The appellate court held that the arbitrator's refusal "effectively denied the [hotel] an opportunity to present any evidence" showing that it was justified in terminating the employee, and went on to vacate the arbitrator's award. *Id*. at 40. Indeed, an arbitrator may not prevent a party from introducing evidence and then use the failure to present evidence as the sole basis for its award—that is "misconduct [that] falls squarely within the scope of Section 10 [of the FAA], and is grounds for vacatur." *Gulf Coast Indus. Workers Union v. Exxon Co., USA*, 70 F.3d 847, 850 (5th Cir. 1995).

Here, the Tribunal not only refused to give any weight to Petitioner's evidence, but refused to allow Petitioner to introduce the evidence at all, and then used the lack of evidence as the sole basis for finding against Petitioner. That is misconduct.

During the course of the hearing, Petitioner attempted to introduce the Declarations from eleven individuals. *See* **Exhibit 5** to the Affidavit of Ronald Gardner. Each Declaration was signed under penalty of perjury and demonstrated that Petitioner had been in contact with individuals and corporate representatives throughout Greater Europe, Eastern Europe, and Scandinavia in an attempt to cure the purported default of Section 5.I of the Agreements. *See id*. When Petitioner offered the Declarations into evidence, however, the Tribunal refused to admit them. The Tribunal's refusal to hear this evidence, in essence, made it so that there was absolutely no evidence on the record related to Petitioner's efforts to cure, and allowed it to find that Respondent's termination was not wrongful.

9

There can be no dispute that the Declarations were both pertinent and material to the controversy between Petitioner and Respondent.  Indeed, if Petitioner was actively taking steps to cure the purported breach, Section 13.A(i) of the Agreements—which prevented Respondent from terminating the Agreements while Petitioner was in the process of curing the purported breach—would have required the Tribunal to find in favor of Petitioner and against Respondent.  The Tribunal's refusal to hear this pertinent and material evidence denied Petitioner an adequate opportunity to present its evidence and argument, was misconduct prohibited by the FAA, and requires this Court to vacate the Final Award.

To make matters worse, the Tribunal offered no explanation or reasoning for its refusal to hear the evidence, and, instead, simply instructed Petitioner's counsel to proceed with questioning. While Respondent's counsel raised certain objections regarding the admission of the Declarations, namely that the Declarations were not on Petitioner's exhibit list and the individual declarants were not on Petitioner's witness list, none of these reasons were sufficient to deny Petitioner the opportunity to present evidence going to the heart of its case.  First, it was not possible for Petitioner to put the Declarations on the exhibit list.  The Declarations did not exist at the time the exhibit list was created and were only obtained during the course of the hearing.  Second, there was no need to put the declarants on the witness list.  The need to introduce the Declarations did not arise until after the Tribunal made it clear that it did not consider Mr. Vandenburg's testimony, alone, sufficiently credible.  Furthermore, given the fact that the declarants lived throughout Europe, it was not practical, or even contemplated, that their attendance at the hearing would be required.

Compounding the Tribunal's misconduct was the fact that the Tribunal had previously ignored deadlines associated with the exhibit list and witness list when it favored Respondent. For example, after the hearing had been underway for approximately seven months, Respondent suddenly informed the Tribunal that it was planning to introduce a rebuttal expert report and might have the rebuttal expert testify at the hearing. Even though this newly created report was not on Respondent's exhibit list and the rebuttal expert was not on Respondent's witness list, the Tribunal allowed Respondent to introduce the rebuttal expert report and granted Respondent permission to allow the rebuttal expert to testify. *See* **Exhibit 6** to the Affidavit of Ronald Gardner (attaching the portion of the hearing transcript where the Tribunal allowed for the introduction of Respondent's surprise rebuttal expert).

Finally, given that Respondent's objections related solely to the lack of notice and potential unfair surprise, rather than refusing to hear the evidence, the Tribunal should have simply postponed the hearing to mitigate any potential for unfair prejudice to Respondent. The Tribunal's failure to do so is, in and of itself, another reason this Court should vacate the Final Award. *See* 9 U.S.C. § 10(a)(3) (providing that a failure to postpone a hearing allows a Court to vacate a final arbitration award); *see also Woodco Mfg. Corp. v. G.R. & R Mfg., Inc.*, 51 A.D.2d 631, 632 (N.Y. App. Div. 1976) ("Where the refusal to grant an adjournment results in the foreclosure of the presentation of material and pertinent evidence, such refusal constitutes sufficient misconduct to vitiate the [arbitration] award.")

Because Section 10(a)(3) of the FAA prohibits the Tribunal from refusing to hear evidence that is pertinent and material to the heart of the controversy, and then base its Final Award solely on

11

the lack of such evidence, this Court must vacate the Final Award and direct the parties back to

arbitration.  *See* 9 U.S.C. § 10(b) (authorizing a court to require a rehearing).

### IV.  Conclusion

For all of the reasons set forth above, Petitioner respectfully requests that this Court vacate

the Final Award due to the Tribunal's misconduct in refusing to hear pertinent and material evidence,

and, alternatively, failing to postpone the hearing to allow for the introduction of the same evidence.

Respectfully submitted,

Dated: December 3, 2010                    **W. MICHAEL GARNER, P.A.**

By S/W. Michael Garner
       W. Michael Garner (WG3558)
230 Park Avenue, 10th Floor
New York, NY  10169
Telephone:  (212) 551-1432
Facsimile:  (612) 259-4810
wmgarner@franchisedealerlaw.com

**ATTORNEYS FOR PETITIONERS**