UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRIOMPHE PARTNERS, INC., ET AL., : | |
| : | |
| Petitioners, : | Case No. 10 CV 08248 (PKC) |
| : | |
| v. : | |
| : | |
| REALOGY CORPORATION, : | |
| : | |
| Respondent. : | |

## MEMORANDUM IN OPPOSITION TO
## MOTION TO VACATE ARBITRATION AWARD

January 7, 2011

David Jacoby
SCHIFF HARDIN LLP
900 Third Avenue, Twenty-Third Floor
New York, NY 10022
(212) 753-5000

COUNSEL FOR RESPONDENT REALOGY CORPORATION

## **Table of Contents**

PRELIMINARY STATEMENT..................................................................................1

I. STATEMENT OF RELEVANT FACTS.........................................................1

II. LEGAL DISCUSSION......................................................................................4

    A. The Petition Should Be Dismissed As Untimely..............................................6

    B. The Petition Should be Rejected Because The Panel Properly Exercised Its Discretion To Reject Last-Minute, Unsworn Form Declarations, and Did Not Refuse to Hear Admissible Evidence Material to the Controversy...........7

        1. The late, unsworn declarations were not material.................................7

        2. The Panel properly exercised its discretion to reject late, unsworn declarations from witnesses who had not been disclosed and were not available for examination.................................................................11

    C. Where Triomphe Did Not Request A Delay Of The Hearing, The Panel Was Not Required To Order An Adjournment Sua Sponte..................13

    D. Pursuant To The Agreements, Realogy Is Entitled To An Award Of Attorneys' Fees For Opposing The Petition.....................................................14

CONCLUSION............................................................................................................15

**PRELIMINARY STATEMENT**

Respondent Realogy Corporation ("Realogy") respectfully submits this opposition to the Petition to Vacate filed by Petitioners Triomphe Partners, Inc., et al. ("Triomphe"). Triomphe has asked the Court to vacate a unanimous reasoned award (the "Award") issued by three experienced arbitrators (the "Panel") after lengthy and careful proceedings. Realogy urges that the Petition be denied in all respects, on two independent grounds. First, Triomphe missed the deadline for serving its Petition to Vacate and therefore is time-barred from pursuing this action. Second, Triomphe cannot meet the strict requirements for overturning the Award, because the Panel properly exercised its discretion to make evidentiary rulings and credibility determinations, and did not refuse to hear any admissible, material evidence.

**I.    STATEMENT OF RELEVANT FACTS**

Realogy is the franchisor of the Coldwell Banker® trademarks and trade name, among others. Under two license agreements (the "Agreements") with Realogy, Triomphe was the subfranchisor for the development of Coldwell Banker real estate brokerage offices in Greater Europe and Eastern Europe.

Pursuant to the contractual arbitration clauses contained in the Agreements, Triomphe and Realogy submitted to the American Arbitration Association (the "AAA") a complex commercial dispute between them. Declaration of David Jacoby ("Jacoby Declaration"), ¶ 3. After Triomphe failed to meet its contractual obligations, Realogy exercised its right to terminate the Agreements for breach, and filed an arbitration demand seeking damages and declaratory relief. Triomphe, in turn, cross-claimed against Realogy, alleging wrongful termination. *Id.*

The Panel spent seventeen days, over a period of eight months, hearing testimony from lay witnesses and experts, and examining hundreds of exhibits, all under the AAA Commercial

Arbitration Rules. *Id.*, ¶ 4. The arbitrators obtained the parties' express confirmation that each side had no further evidence to submit. Transcript of Proceedings ("Tr."), Jacoby Declaration Ex. B, p. 4660. Following the close of proof, the Panel reviewed more than 4600 pages of transcript and more than 120 pages of post-trial submissions, and spent a full day hearing closing arguments. Jacoby Declaration, ¶ 4. The Panel ultimately rendered a reasoned Award on August 4, 2010, which was served upon counsel for the parties by electronic mail that same day. *Id.*, ¶ 5. The Panel concluded that Triomphe failed to meet certain minimum, objective quota requirements, in material breach of the Agreements, justifying Realogy's termination of the relationship with Triomphe. Award, Ex. A to Jacoby Declaration ("Award"), pp. 1-2, 5.

While there were multiple claims and counterclaims between the parties, on the fundamental contractual issue the Panel noted that it was "undisputed" that Triomphe "did not achieve the required number of franchised real estate brokerage offices on or before the specified dates for Greater European countries...." *Id.* at 2. Despite receiving "significant time" from Realogy to cure its Greater Europe defaults (*id.* at 4), Triomphe failed to do so, and the number of Coldwell Banker offices in that territory continued to decline. *Id.* at 3-5. With respect to Eastern Europe, the Panel observed that Triomphe failed, over a period of seven years, to open any offices at all in thirteen of the fifteen countries in Eastern Europe. *Id.* at 3. The Panel found that Triomphe failed to provide the reasonable assurance of performance that Realogy demanded, and characterized the business plan submitted by Triomphe as "wholly inadequate." *Id.* at 3. Because Realogy was entitled to treat the lack of adequate assurance as a repudiation of

the Eastern European agreement, the Panel found the termination of that Agreement to be justified as well.[1]

The AAA issued the Award on August 4, 2010, and served it upon counsel for the parties by electronic mail that same day. Jacoby Declaration, ¶ 5. Petitioners filed this action on November 1, 2010, but did not serve their Petition upon Respondent's registered agent until November 5, 2010, three months and one day after the Award was filed and served electronically. Affidavit of Service, Doc. No. 4.[2]

In their Petition to Vacate, Petitioners complain of three rulings the arbitrators made in the course of the arbitration. First, Petitioners allege that the Panel engaged in misconduct during the arbitration by sustaining Realogy's objection to Triomphe's tender of eleven surprise written "declarations" on the day before the conclusion of all testimony. It is undisputed that the alleged declarants had not been disclosed on Triomphe's witness list, and were not made available for examination by the Panel or Realogy, either in person or by telephone. Tr., p. 4124-25, 4128, 4138. The declarations were not signed before a notary or European equivalent, and while each recited that it was signed "under penalty of perjury," there was no indication of applicable law, submission to jurisdiction or consequences for a false or inaccurate statement. *Id.*, pp. 4141, 4126-28. The transcript reflects that Triomphe's own counsel described those declarations to the Panel as merely "corroboration" for the testimony of Triomphe's chairman,

---

[1] The Panel denied Realogy's other claims, and Triomphe's counterclaims, and declined to award attorneys' fees to either party. Award, p. 9.

[2] Although Petitioners' supporting affidavit and exhibits were not supplied until November 23, 2010, and only after repeated requests from Respondent's counsel, Realogy's opposition does not rely on service of an incomplete pleading. *See, e.g., Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 257 F. Supp.2d 681, 684 (S.D.N.Y. 2003)(notice of motion was timely, even where supporting affidavit was not). In the case before this Court, it was the late service of the Petition itself that failed to meet the requirements of the Federal Arbitration Act.

who already had testified at length on the subject of his contacts with potential sublicensees in Europe. *Id.*, pp. 4124, 4130.

Second, although Triomphe made no request of the Panel to delay the close of proof, Petitioners now seek to vacate the award because the Panel did not *sua sponte* suggest a postponement of the final session of the arbitration hearing to enable Petitioners to locate and present the alleged declarants for examination. *Cf. Id.*, pp. 4124-4144 *with* Petition, ¶ 36.

Finally, Petitioners complain, without apparent purpose, that the Panel had granted Respondent's motion in January 2010 to designate a rebuttal damages expert, in response to certain opinions offered by Triomphe's expert. It is uncontroverted that both damages experts generated reports, were produced for deposition, testified at the hearing and were subjected to cross-examination. The Award did not reach the issue of damages, because the Panel found against Triomphe on its claims for liability. Award, pp. 9-10.

## II.     LEGAL DISCUSSION

A motion to vacate "is not an occasion for de novo review of an arbitral award." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004). Instead, "it is well-established that courts must grant an arbitration panel's decision great deference." *Id.* In order to overcome that deference, Petitioners must meet a heavy burden:

> <u>A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances</u> delineated by statute and case law. ....
> The FAA sets forth certain grounds upon which a federal court may vacate an arbitral award, but "<u>all of these involve corruption, fraud, or some other impropriety on the part of the arbitrators.</u>"

*Id.*(emphasis supplied), citing *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) and 9 U.S.C. §10(a) (2010).

In the case before this Court, Petitioners completely fail to satisfy that burden. First, the Petition is time-barred. Petitioners served the Petition after the limitations period set by the Federal Arbitration Act, and therefore are precluded from seeking to vacate the arbitration award. Second, each of the rulings Petitioners protest was fully within the authority and discretion accorded to the Panel by the parties under the Commercial Arbitration Rules incorporated into the Agreements. The Panel was entitled to sustain Realogy's objection to the use of cumulative, late, unsworn declarations from witnesses who had not been disclosed in accordance with the Panel's requirements or the AAA Commercial Rules. Neither the FAA nor the applicable AAA rules required that the Panel order a postponement *sua sponte,* nor did they require that the Panel suggest to Triomphe's experienced trial counsel that he should consider requesting a delay for the purpose of locating and presenting the declarants for examination. Triomphe made the decision to complete its presentation of exhibits and testimony, and advised the Panel that it had no further evidence to present. Tr., pp. 4561-62, 4660.

The Petition to vacate the ruling (and start the proceedings over again) is wholly inconsistent with the finality the parties sought and agreed to accept by adopting their contractual arbitration clause. Triomphe and Realogy expressly agreed to waive any right to challenge the "validity or enforceability" of an award that decided a dispute between them. Agreements, Doc. Nos. 8-1 – 8-2, Par. 22(H).[3] Absent any evidence of fraud, corruption or arbitrator misconduct, there are no grounds before this Court to permit Triomphe to escape the force of the ruling it agreed to accept as "conclusive and binding." *Id.*

---

[3] Each Agreement provided, in relevant part, "The award and decision of the arbitrator shall be conclusive and binding upon all parties hereto and judgment upon the award may be entered in any court of competent jurisdiction. The parties acknowledge and agree that any arbitration award may be enforced against either or both of them, in a court of competent jurisdiction and each waives any right to contest the validity or enforceability of such award." Agreements, Doc. Nos. 8-1 – 8-2, Par. 22(H).

### A. The Petition Should Be Dismissed As Untimely

Section 12 of the Federal Arbitration Act, 9 U.S.C. § 12 (2010), sets very specific requirements for a challenge to an arbitration award, including strict time limits. The statute provides, in relevant part, that "Notice of a motion to vacate, modify or correct an award must be <u>served</u> upon the adverse party or his attorney <u>within 3 months</u> after the award is filed or delivered...." (emphasis supplied.) Where, as here, the adverse party is a nonresident of the district in which the award was made, then "notice of the application" shall be served by the marshal "in like manner as other process of the court." Realogy, a Delaware corporation with its principal place of business in New Jersey, was served with process by delivery to its New York registered agent, CSC, on November 5, 2010, three months and one day after delivery of the Award. Affidavit of Service, Doc. No. 4 (service occurred on November 5, 2010); Petition, ¶ 1 (Realogy is a Delaware corporation with its principal place of business in New Jersey).

Petitioners' failure to comply with the timing requirement is an absolute bar to their petition to vacate the award. As the Second Circuit has declared, "We have made clear that a party may not raise a motion to vacate, modify or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm." *Wallace v. Buttar*, 378 F.3d at 198, citing *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1985) ("We hold, as have other circuits, that a party may not move to vacate after three months from the time the arbitration panel issued its award"); *see also Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 574 (7th Cir. 2007) (denying as untimely a motion to vacate that was filed and served "three months and one day" after the final arbitration award was delivered).

As one court explained, "The Second Circuit has made clear that there is no exception to this three month limitation period. To allow for broader review or a longer time to appeal would

undermine the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *M.J. Woods v. Conopco, Inc.*, 271 F. Supp.2d 576, 582 (S.D.N.Y. 2003); *see also Kruse v. Sands Brothers & Co., Ltd.*, 226 F.Supp. 2d 484, 486 (S.D.N.Y. 2002) (and citations therein) (there is "good reason for the Act's three-month limitation"). Triomphe's Petition therefore should be denied as time-barred.

### B. The Petition Should be Rejected Because The Panel Properly Exercised Its Discretion To Reject Last-Minute, Unsworn Form Declarations, and Did Not Refuse to Hear Admissible Evidence Material to the Controversy

The arbitrators' unanimous decision to bar eleven last-minute, unsworn "declarations" was fully within their authority under the AAA Commercial Rules, and cannot justify vacating the Award. The declarations lacked any evidentiary foundation, and purported to be from people who were not only unavailable for examination but also had never been disclosed in answers to interrogatories or on Triomphe's lengthy witness list. Furthermore, contrary to Petitioners' assertions to this Court, the Award and the transcript reflect that the excluded statements were not "pertinent and material" to the controversy. Because the Panel's decision to refuse those statements was not misconduct, that ruling does not justify the vacating of the Award.

#### 1. The late, unsworn declarations were not material.

On the sixteenth day of proceedings, the day before the presentation of proof concluded as scheduled, Triomphe asked the Panel to receive into evidence and consider a stack of eleven unsworn declarations as "additional corroboration" for the testimony of its Chairman and chief witness, Mr. Wayne Vandenburg. Tr., p. 4124 ("we would now like to offer the statements -- we're not going to read them into the record -- as additional corroboration for Mr. Vandenburg's testimony"); p. 4130 ("And the only reason I'm offering these, by the way, as I add, is corroboration. I'm offering them for no other purpose....").

Triomphe had offered extensive testimony from Vandenburg regarding meetings he had held in cities across Europe about potential licensing transactions, all of which were ultimately unsuccessful. It was "undisputed" that Triomphe failed to meet the objective contractual requirements (the "Minimum Quota Requirements") for opening specified numbers of Coldwell Banker offices in specified European countries by specified dates, thereby breaching the Agreements. *Id.*, p. 2. Realogy therefore issued a Notice of Default in May 2007. Vandenburg assured the Panel that he pursued "numerous contacts ... in multiple countries in the second half of 2007," and thus satisfied the cure provision of the Agreements. Award, p. 4. Despite the efforts he described, the Panel specifically found that Triomphe "did not make any significant progress toward curing the defaults" during the seven-month cure period that Realogy allowed. *Id.* In fact, the number of real estate brokerage offices "continued to decline" and "the problems with the existing offices increased." *Id.* In the face of Triomphe's continuing, material breach, the Panel concluded that Realogy properly terminated the Agreements. *Id.* at 5.

Petitioners contend by rejecting the declarations the Panel refused all evidence of cure, and then "punished Triomphe for the lack of such evidence." Petition, pp. 3, 11 (¶ 30). That argument is demonstrably false, given the many hours of testimony the Panel heard from Vandenburg about meetings and prospective deals. *See, e.g.*, Tr., pp. 2478-2530, 4087- 4123, 4313-14 (representative Vandenburg testimony). Petitioners go so far as to misrepresent the Panel's findings, claiming that "the Tribunal found that Petitioner had failed to offer any evidence showing that Petitioner was in the process of curing the alleged breach." Petition, p. 3. In fact, the Panel made no such determination. In contrast, the Award expressly noted Vandenburg's claim that he was pursuing "numerous contacts ... in multiple countries in the

second half of 2007." Award, p. 4. Petitioners fail to advise the Court that the Panel found that Vandenburg's claim of diligent cure efforts was "simply not credible." *Id.*

In particular, the arbitrators expressed concern about the lack of documentary evidence, and had asked Triomphe to produce "any evidence of contacts that Mr. Vandenburg was pursuing after the delivery of the Notice of Default." Award, p. 4. The Transcript reflects that the Panel first raised this issue during the November 13, 2009 proceedings. *See. e.g.,* Tr., pp. 2521-22. In response to a question from one of the arbitrators about the absence of documentation, Vandenburg assured the Panel that he had "backup materials that can substantiate" his testimony regarding negotiations with people in various countries, and added, "if you want, we'll get affidavits from those people." *Id.* After his November testimony, Vandenburg resumed discussion of those negotiations during the arbitration proceedings held in March 2010. Tr. 4087-4123, 4313-14. Despite the many intervening months available to look for supporting business records, Triomphe was unable to find any such documents:

> Triomphe advised this Tribunal that it searched all of its records and that it was unable to find any evidence including, e-mails confirming meetings, hotel or airline reservations, credit card receipts, memos, or other correspondence which would show that Mr. Vandenburg was pursuing the cure "diligently at all times." The Tribunal concludes that it is simply not credible that there would be no e-mails, travel documents, phone records or other documents confirming Triomphe's assertions.

Award, p. 4; see also Tr., pp. 4088, 4095-96.

On March 3, 2010, the day before testimony was set to conclude, Triomphe offered eleven unsworn, late declarations, from European nationals who allegedly signed brief, form statements two days earlier. The declarants recited that they had been "in discussions" or "contemplating" a transaction with Triomphe as of July 2007, but that the transaction "was never completed" or "did not proceed." Declarations, Doc. No. 8-5. The declarations made no

-9-

reference to any meetings or discussions between July 2007 and the December 2007 termination date, the last five months of the cure period. *Id.* (Par. 2 in each Declaration begins "As of July 2007").

As set forth below, the Panel was entitled to refuse to admit those statements into evidence, on both procedural and substantive grounds. Furthermore, though, the statements were not material to the issue of Triomphe's objective failure to cure, reflected in the reduction in the number of open offices during the cure period. Vandenburg himself admitted that he was "delaying" deals (Tr. at 4114), and these brief declarations about failed deals did not address at all the last five months of the cure period, or the diligence of Triomphe's efforts at any time. Doc. No. 8-5. Even counsel for Triomphe admitted, the declarations were "not terribly specific...." Tr. 4129. At best, they were cumulative of generalized parts of the Vandenburg testimony.

As this Court has noted, the exclusion of cumulative evidence is not an exclusion of "material" proof within the meaning of 9 U.S.C. Section 10(a)(3). *Ganguly v. Charles Schwab & Co.*, 2004 U.S. Dist. LEXIS 1433 (S.D.N.Y. Feb. 4, 2004), *aff'd*, 2005 U.S. App. LEXIS 15522 (2d Cir. July 25, 2005). Rule 31(b) of the American Arbitration Association Commercial Rules (the "Commercial Rules") provides, in relevant part:

> The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

Triomphe itself advised the Panel that the declarations were offered only to corroborate testimony already given to the Panel by Vandenburg. The Panel was entitled to accept Triomphe's representation that the statements were cumulative, and also entitled to exercise its discretion to reject unsworn generalities from unavailable witnesses about the status of unsuccessful discussions with Vandenburg as of July 2007.

### 2. The Panel properly exercised its discretion to reject late, unsworn declarations from witnesses who had not been disclosed and were not available for examination.

Substantively, the declarations failed to satisfy even the basic requirements for an evidentiary foundation. None of the declarations recited that the witness took any kind of oath, or swore to tell the truth. *Id.* at 4141; *Cf.* Fed.R.Ev. 603 (requiring oath or affirmation). None of them was notarized, and none was signed before a consul or other official. Tr., pp. 4126-28. While the words at the end of each declaration stated that they were signed "under penalty of perjury," the declarants did not specify where they resided or signed their statements, did not agree to submit to the jurisdiction of any court or panel, and did not specify what perjury laws the rote incantations actually meant. In response to questions from the Panel, Triomphe acknowledged that it had taken no steps to determine if the witnesses were available for questioning by telephone or video. *Id.* at 4138.[4] The need for such questioning, had the declarations been admitted, was evident from their face, given how general their statements were, the lack of an evidentiary foundation for any of the "discussions" referenced, and the oddity that eleven different individuals from different countries used largely the same wording to express themselves. Doc. No. 8-5; *Cf.* Fed.R.Ev. 802 (Hearsay), 805 (Hearsay Within Hearsay).

Furthermore, the eleven declarants were not disclosed in response to long-standing interrogatories, which required the identification of any persons whom Triomphe believed might have knowledge pertaining to the issues before the Panel. Tr., pp. 4124-4125. Neither were the individual declarants among the 28 names on Triomphe's witness list. *Id.* at 4125, 4128 ("THE

---

[4] The parties had used Skype technology to examine another witness, Valentin Ilie, whom Realogy presented for direct and cross examination in the New York arbitration, while he was physically in Romania. Tr., p. 4138.

CHAIRMAN: Hold on one second. So why aren't any of these people listed when the demands were made by Mr. Schwimmer, as he just pointed out before?") Although Triomphe's counsel acknowledged that he had foreseen the potential need to present such testimony in November 2009 (*id.* at 4128-29), Triomphe had not amended its interrogatory answers or even its witness list before handing the declarations to the Panel on March 3, 2010.

The Commercial Rules fully authorized the Panel to reject statements from witnesses who could not be examined by the opposing party or the arbitrators. Rule 30 provides, in relevant part, "Witnesses for each party shall also submit to questions from the arbitrator and the adverse party." While an arbitrator or arbitration panel may exercise "discretion" to waive that requirement, and "may" accept a declaration or affidavit, they are not required to do so. *Id.; see also* Commercial Rule 32 (arbitrator "may" accept evidence by affidavit or declaration, "but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission.")

Indeed, Triomphe itself had insisted that the Panel reject another exhibit that had not been timely disclosed, where the witness had become unavailable for further examination due to illness. When Realogy offered a website page containing background information to corroborate testimony given by Ms. Makatura, Triomphe's counsel complained, "[T]here is absolutely no reason I should be ambushed with" that page, and further objected, "I have been denied an opportunity to cross-examine her on that material...." The Panel sustained Triomphe's objection to the exhibit. Tr., pp. 4305 – 06.[5]

---

[5] The vehemence of the parties' objections to the use of undisclosed material echoed the concern reflected in Rule 807 of the Federal Rules of Evidence, which provides that even a statement that displayed some guarantee of trustworthiness only falls within the Residual Exception to the hearsay rule if its contents, and the name and address of the declarant, are

The Panel appropriately confirmed that the AAA Commercial Arbitration Rules applied, heard argument, took a recess to deliberate, and then properly sustained the objection to the introduction of eleven unsworn declarations from undisclosed, unavailable witnesses. *Id.* at 4124, 4143. Petitioners cannot establish that the Panel's ruling represented misconduct of any kind, let alone justify the vacatur of the Panel's final Award.

### C. Where Triomphe Did Not Request A Delay Of The Hearing, The Panel Was Not Required To Order An Adjournment Sua Sponte.

Petitioners now complain that the Panel did not order a delay of the hearing to permit Triomphe to arrange for the declarants to appear as witnesses. That argument carefully avoids disclosing that Petitioners never requested such an adjournment. Instead, Triomphe chose to close its proof. Tr., pp. 4559 -4561 ("I think I'm closing...."). When the Panel asked if there were anything else that Triomphe wished to call to the Panel's attention before concluding its case, Triomphe's counsel replied, "Not at this time. Thank you very much." *Id.* The Chair of the Panel continued,

> THE CHAIRMAN: Do you have any other
> information to present us on your direct
> case?
> MR. GARDNER: I do not.
> THE CHAIRMAN: All right, then you rest.

Tr., pp. 4561-62. The Panel was equally careful at the close of all the evidence, asking each side whether it had any further evidence to present. Because the answer from each side was "no," the Panel declared the record closed, with the exception of two submissions regarding part of the analysis offered by Triomphe's expert:

---

disclosed "sufficiently in advance of the hearing to provide the adverse party with a fair opportunity to prepare to meet it...." Fed.R.Ev. 807.

> THE CHAIRMAN: Okay. Mr. Schwimmer, other – than as counsel for claimant, other than the submission that we've given you leave for within a week, do you have any further testimony or information to give us in this matter.
> MR. SCHWIMMER: No, sir.
> THE CHAIRMAN: Same question to you, sir.
> MR. GARDNER: No, sir.
> THE CHAIRMAN: Then with the exception of the two submissions that we have allowed for, the record in this matter will be deemed closed as of today, and the evidentiary portion is deemed complete.

*Id.*, p. 4660.

There was no Triomphe request to delay the close of proof, or to permit witnesses to appear later by video or in person.[6] In light of those facts, Petitioners cannot fault the arbitrators for not ordering an adjournment *sua sponte*. Rule 28 of the Commercial Rules permits, but does not require, an arbitrator to postpone a hearing. It provides, "The arbitrator <u>may</u> postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative." (emphasis supplied).

### D. Pursuant To The Agreements, Realogy Is Entitled To An Award Of Attorneys' Fees For Opposing The Petition

Realogy requests that the Court award attorneys' fees, costs and expenses that Realogy incurs in opposing the Petition to Vacate. The Agreements explicitly provide that the prevailing party in any legal proceeding "shall be entitled to recover all costs of such arbitration or other proceeding, including attorneys' fees." Agreements, Doc. Nos. 8-1, 8-2, Pars. 22(I). The prevailing party in the proceeding before this Court therefore should be entitled to obtain an

---

[6] Neither did Triomphe request briefing of any kind, despite its unsupported assertion that "neither side was permitted to file a written brief arguing their position...." Petition, ¶ 27.

-14-

award of the legal fees and expenses required to defend this federal action. Accordingly, Realogy respectfully prays for full compensation for the costs and fees it has incurred, and will incur in the future, in opposing the Petition to Vacate.

## CONCLUSION

Triomphe obtained a full hearing from a Panel of experienced arbitrators, who carefully evaluated the substance of the parties' claims before rendering a reasoned award. Triomphe had agreed to the arbitration clause, and waived any right to challenge an award. Only after learning that the Panel had rejected its claim of wrongful termination did Triomphe protest that the proceedings had been tainted and should be vacated. With no evidence whatsoever of partiality, corruption or misconduct, Triomphe has presented this Court with an untimely challenge, based on evidentiary rulings and evaluations of credibility that the Panel was fully entitled to make. Triomphe therefore cannot satisfy the heavy burden of proof that the courts and Congress have required to overturn an arbitral decision. Realogy respectfully asks this Court to dismiss the Petition, and to award Realogy its attorneys' fees, expenses and costs for the defense of the action before this Court.

Dated: January 7, 2011
      New York, New York

Respectfully submitted,

_____
David Jacoby (DJ 3440)
SCHIFF HARDIN LLP
900 Third Avenue, Twenty-Third Floor
New York, NY 10022
(212) 753-5000

COUNSEL FOR RESPONDENT
REALOGY CORPORATION