UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

TRIOMPHE PARTNERS, INC., ET AL.,

                          Petitioners,                  Case No. 10 CV 08248 (PKC)

v.

REALOGY CORPORATION,

                          Respondent.

---

**RESPONDENT'S REPLY MEMORANDUM IN FURTHER OPPOSITION TO
<u>PETITION TO VACATE ARBITRATION AWARD</u>**

February 4, 2011

David Jacoby
SCHIFF HARDIN LLP
900 Third Avenue, 23rd Floor
New York, New York 10022
(212) 753-5000

COUNSEL FOR RESPONDENT REALOGY CORPORATION

## Table of Contents

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL DISCUSSION .................................................................................................. 2

    A. The Petition Was Untimely Because It Was Not Served Within Three Months After The Award Was Delivered. ......................................................... 2

    B. The Panel Properly Exercised Its Discretion to Refuse Petitioners' Late, Unsworn Declarations. .............................................................................. 6

        1. Petitioners do not dispute the Panel's discretion to reject statements from unavailable, undisclosed witnesses ............................ 6

        2. The Panel had discretion to reject declarations that were not properly sworn under 28 U.S.C. § 1746. ................................................ 7

        3. The declarations were not material to the Panel's decision. ................. 8

    C. Realogy is Entitled to Its Attorneys' Fees and Expenses ................................. 10

III. CONCLUSION ........................................................................................................... 10

I.  **INTRODUCTION**

Respondent Realogy Corporation ("Realogy") respectfully submits this Reply in further opposition to the Petition to Vacate filed by Petitioners Triomphe Partners, Inc., et al. ("Triomphe" or "Petitioners"). The Panel's reasoned Award made clear in its holding that Triomphe breached objective contractual obligations, and failed to make any significant progress toward curing those defaults. Award at 4. In view of those failings, the Panel upheld the December 2007 termination of the exclusive rights Realogy had granted to Triomphe to subfranchise the Coldwell Banker system in Europe.

Petitioners' Reply does not deny the discretion the parties granted to the Panel under the AAA Commercial Rules to reject late, unsworn statements from witnesses unavailable to testify. Instead, Petitioners continue to insist that the Panel improperly excluded material evidence by refusing to accept eleven late, unsworn declarations that alluded to potential deals with Triomphe that never came to pass. Petitioners assert that the declarations would have established "diligence," to counter what Petitioners repeatedly misrepresent as a Panel holding: that Triomphe "failed to diligently work towards a cure...." (Pet. Reply at 5-6). As set forth above, that was not the Panel's holding. The Panel based its reasoned Award on the objective breach of quota obligations throughout Greater and Eastern Europe, and Triomphe's equally objective failure to "make any significant progress toward curing" those defaults. Award at 4. The unsworn declarations on which Petitioners rely thus were immaterial on their face, given that they did not address the breaches, or reflect significant progress before the December 2007 termination, or even address any purported efforts of Triomphe in the last half of that year.

In any case, even these limited issues are not properly before the Court, because Petitioners failed to serve Respondent with the Petition to Vacate by the deadline mandated by 9 U.S.C. § 12 (2010). The Federal Rules of Civil Procedure, and their provisions regarding the

computation of time, neither apply to nor alter the strict timing requirements of the Federal Arbitration Act ("FAA"). Moreover, as the Second Circuit has observed, the FAA does not allow for common law exceptions to the three-month limitations period. Finally, Petitioners cannot excuse their failure to meet that deadline by blaming Realogy, or by tendering conclusory hearsay about an earlier effort to serve an unnamed person at an unspecified location, rather than Realogy's publicly-disclosed registered agent.

## II. LEGAL DISCUSSION

### A. The Petition Was Untimely Because It Was Not Served Within Three Months After The Award Was Delivered.

Petitioners urge the Court to apply the Federal Rules of Civil Procedure to compute the FAA deadline. Pet. Reply at 2. The express provisions of the Federal Rules direct otherwise. Rule 81 provides, in relevant part, that the Federal Rules govern proceedings "except as these laws provide other procedures: ... 9 U.S.C., relating to arbitration...." Fed. R. Civ. P. 81(a)(6)(B). The FAA does provide its own procedural rule: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12 (2010). *See also Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 571-572 (7th Cir. 2007) (rejecting petitioner's reliance on a Fed. R. Civ. P. exception to his untimely petition, noting, "the Federal Rules do not preempt the FAA").

Section 12 expressly requires that the three-month period be calculated from the date of the award. *See, e.g., Wallace v. Buttar*, 378 F.3d 182, 197-198 (2d Cir. 2004) (citing *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) ("[W]e hold, as have other circuits, that a party may not move to vacate after three months from the time the arbitration panel issued its award")); *Webster v. A.T. Kearney, Inc.*, supra, 507 F.3d at 574 (denying as untimely a motion to vacate that was filed and served "three months and one day" after the final arbitration award was

delivered); *Colavito v. Hockmeyer Equipment Corp.*, 605 F.Supp. 1482, 1487 (S.D.N.Y. 1985) (limitations period for action to vacate is three months, "calculated from the date of the award"); *Chase v. Nordstrom, Inc.*, Civil No. CCB-10-2114, 2010 WL 4789442, at *2 (D.Md. Nov. 17, 2010) (denying petition to vacate, because last day of FAA's three-month period was July 30, after AAA transmittal of award to both parties on April 30).

Petitioners would "exclude the day of the event" under Rule 6(a)(1)(A), relying upon *Holodnak v. Avco Corp.*, 381 F.Supp. 191 (D.Conn. 1974). But *Holodnak*, decided 37 years ago, did not exclude the award's delivery day. Instead, it applied Fed. R. Civ. P. 6(a)(1)(C) to a situation where the FAA was silent: when the statutory time expired on a Sunday. Absent an FAA provision, the court applied the Federal Rules to allow for Monday service. *Id.* at 198.[1]

The FAA is not silent about either the starting date or the ending date for the three-month period here. The Petition was to be served three months after August 4, on November 4, a Thursday. As the Second Circuit explained in *Florasynth v. Pickholz*, supra, "there is **no** common law exception to the three month limitations period on the motion to vacate." 750 F.2d at 175 (emphasis supplied). *See also Pennsylvania Engineering Corp. v. Islip Resource Recovery Agency*, 714 F.Supp. 634, 638 (E.D.N.Y. 1989) (holding that the FAA does not allow the principle of relating-back because "[t]he Act's statute of limitations provisions recognize no common law exceptions. Therefore, plaintiffs cannot use a common law exception to circumvent the Act's strict time limitations" (citing *Florasynth, Inc. v. Pickholz*, supra, 750 F.2d at 175)).

---

[1] The court further noted that when the petition had not been served due to "an overload of business in the United States Marshal's office" *id.* at 197, the petitioner had sought and obtained leave of court for alternative service.

"Equitable tolling" is therefore inapplicable to the express FAA deadline. Second Circuit authorities declare there are no such common law excuses for a filing untimely under FAA. *Wallace v. Buttar*, supra, 378 F.3d at 198; *Florasynth, Inc. v. Pickholz*, supra, 750 F.2d at 175; *see also Webster v. A.T. Kearney, Inc.*, supra, 507 F.3d at 574; *M.J. Woods v. Conopco, Inc.*, 271 F. Supp.2d 576, 582 (S.D.N.Y. 2003) ("The Second Circuit has made clear that there is no exception to this three month limitation period"); *Kruse v. Sands Brothers & Co., Ltd.*, 226 F.Supp. 2d 484, 486 (S.D.N.Y. 2002) (and citations therein).[2]

Although Petitioners ask the Court to weigh their claimed diligence against a lack of prejudice to Realogy, their authorities do not support the application of any such standard. *Deluca v. AccessIT*, 695 F.Supp.2d 54, 66 (S.D.N.Y. 2010), for example, addressed only the Rule 4(m) requirement that a plaintiff show good cause for not serving a complaint within 120 days of filing. In determining good cause for that purpose, courts weigh the plaintiff's reasonable diligence against the prejudice to the defendant resulting from the delay. The case addressed neither the FAA nor equitable tolling under it.

Even the inapposite equitable tolling cases do not hold that a lack of prejudice is sufficient to toll a deadline. As the Supreme Court explained in a Title VII case: "Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an

---

[2] Equitable tolling of other deadlines is appropriate only "in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *ZerilliEdelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotations and citations omitted). Courts consider whether the person seeking application of the equitable tolling doctrine (1) acted with reasonable diligence and (2) established extraordinary circumstances. *Id.* at 80-81. Both are lacking here. Moreover, vague or conclusory assertions are "insufficient to justify any further inquiry into tolling." *See Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

independent basis for invoking the doctrine and sanctioning deviations from established procedures." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984). *See also Jenkins v. Potter*, 271 F.Supp.2d 557, 565 (S.D.N.Y. 2003) ("The issue of prejudice is not relevant absent some other valid reason for a time limit to be equitably tolled ... [A]s plaintiff has not shown any other basis for equitable tolling in this case, prejudice to defendants is not a factor to be considered." (citing *Baldwin*, 466 U.S. at 151)).

Finally, Petitioners now try to make their failure to meet the FAA deadline Realogy's responsibility. They provide neither fact nor law to warrant such a shift in responsibilities. The FAA instructs the <u>petitioner to serve the respondent</u> in "like manner as other process of the court." 9 U.S.C § 12 (2010). Three days before Triomphe's deadline expired, on November 1, 2010, Petitioners' counsel wrote to counsel for Realogy and, among other things, asked her to accept service of the Petition. Respondent's counsel was under no obligation to do so. In an effort to explain what they did next, Petitioners attach a string of unsworn e-mails, replete with hearsay, asserting without foundation that some unnamed person purportedly refused to accept service at an unspecified corporate address. The original affidavit filed with the Court attested to service on November 5, 2010 and mentioned no prior service attempt. The new e-mails do not even name the street or town of attempted service, referring to it simply as "the address provided." Gardner Aff. Ex. B, Doc. No. 17-1. In the proffered e-mail string, a Minnesota process server appears to repeat a statement by a New Jersey process server, who claims that "they" "stated that we must serve the papers c/o Corporation Service Co., 830 Bear Tavern Road, West Trenton, NJ." Petitioners' claim that Realogy "caused the delay," Pet. Reply. at 4-5, is wholly unsupported. Indeed, these are precisely the types of "vague and conclusory" assertions against which the Second Circuit has cautioned, even where equitable tolling applies.

Realogy respectfully asks that the Court dismiss this Petition as untimely. The FAA specifies a deadline, which the Federal Rules specifically exempt from their provisions. That deadline is a strict one, to which common law doctrines like equitable tolling do not apply. Petitioners have made no showing, under any applicable doctrine, excusing their late service.

### B. The Panel Properly Exercised Its Discretion to Refuse Petitioners' Late, Unsworn Declarations.

Petitioners do not address several points made in Realogy's initial brief. They do not dispute the substantial deference courts accord to the decision of an arbitration panel, nor do they dispute the heavy burden to overturn such an award. As the Second Circuit has explained, petitioners must establish corruption, fraud, or some other impropriety on the part of the arbitrators. *See, e.g.*, *Wallace v. Buttar*, supra, 378 F.3d at 189; Respondent's Memorandum in Opposition to Motion to Vacate Arbitration Award ("Response") at 4, collecting authorities.

#### 1. Petitioners do not dispute the Panel's discretion to reject statements from unavailable, undisclosed witnesses.

Petitioners also do not address the discretion accorded to the Panel under the AAA Commercial Rules to reject statements from absent or undisclosed witnesses, and witnesses who are unavailable for examination. See Response at 12, collecting authorities.[3] Petitioners do not deny that they made no arrangements for questioning the eleven late declarants, despite the willingness of the Panel and the parties to examine another distant witness by use of video technology. *Cf. id.* at 11 *with* Pet. Reply.

---

[3] For the convenience of the Court, a true copy of the AAA Commercial Rules is annexed as Exhibit A to the Supplemental Declaration of David Jacoby dated February 4, 2011 ("Jacoby Supp. Decl.").

    2.    **The Panel had discretion to reject declarations that were not properly sworn under 28 U.S.C. § 1746.**

Petitioners argue that the declarations should have been accepted as sworn, because they intoned the words, "under penalty of perjury ...." Petitioners assert that the wording was sufficiently close to the standards of 28 U.S.C. § 1746 to be admissible, and assert further that "the Second Circuit expressly rejected a nearly identical argument on nearly identical facts." Pet. Reply at 8. Those assertions are flatly incorrect.

In *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61 (2d Cir. 1999), the Second Circuit upheld the district court's decision to accept a declaration opposing a motion for summary judgment on an unpaid legal bill. The defendant Worsham was not "an individual from Russia," but rather a man from Gatlinburg, Tennessee. *Cf.* Pet. Reply at 8 *with* 185 F.3d at 63. His counsel had withdrawn, and he was appearing pro se. The court determined that his declaration, "under penalty of perjury," substantially followed the Section 1746 form.

While that recitation was acceptable to the court for a domestic party's declaration, the requirements are different for foreign declarants. Section 1746 explicitly requires that if a declaration is executed "without the United States," it must substantially follow another form:

> I declare (or certify, verify, or state) under penalty of perjury **under the laws of the United States of America** that the foregoing is true and correct. Executed on (date). (Signature).

28 U.S.C. § 1746 (2010) (emphasis supplied). *See, e.g., Sterling Fifth Associates v. Carpentile Corporation, Inc., et al.*, No. 03 Civ. 6569, 2003 WL 22227960, at *5 (S.D.N.Y. September 26, 2003) ("[W]hen executed outside the United States, such an unsworn statement must indicate that the statement is made under penalty of perjury **under the laws of the United States of America**") (emphasis in original, rejecting foreign declaration that cited 28 U.S.C. §1746, contained penalty of perjury language, but lacked invocation of laws of the United States);

*Gotlin v. Lederman*, 616 F.Supp. 2d 376, 389, n.7 (E.D.N.Y. 2009) (declaration from Italian witness that failed to represent that statements were subject to penalty of perjury, were made under United States law, and were true and correct, would be inadmissible).

Petitioners' counsel admitted to the Panel that all eleven of the proffered declarations were from European nationals who signed their statements in Europe. Coupled with the fact that the witnesses were unavailable for examination and had not been disclosed as required by the Panel, the arbitrators properly exercised their judgment and discretion to reject them. Counsel now argues that he did not request a further delay in the hearing because he could only "guess" why the declarations were refused. Pet. Reply at 6. Given the detailed objections from Realogy, and questions from the arbitrators themselves, that plainly was not the case. Petitioners' counsel admitted that he knew that the Panel was concerned with the absence of the declarants. Jacoby Decl. Ex. B, Tr. 4132:6-4133:4. He offered to withdraw the declarations and present them later as rebuttal witnesses. *Id.* When pressed by the Panel, though, Petitioners' counsel decided not to withdraw the statements. *Id.* Instead, Petitioners' counsel repeatedly advised the Panel of his intention to close his case, *id.*, pp. 4559-61, and twice told the Panel that Triomphe had no other proof to submit. *Id.* pp. 4561-62, 4660. Petitioners cannot now blame the Panel for not *sua sponte* delaying the hearing.

### 3. The declarations were not material to the Panel's decision.

Petitioners contend that it is "nonsensical" to argue both that the declarations were cumulative and that their chairman, Wayne Vandenburg, was not credible. Pet. Reply at 7. Yet Petitioners' counsel himself advised the Panel that the declarations were cumulative of Vandenburg's testimony. The Panel surely was reasonable in thinking so, too.

Petitioners do not address the fact, discussed in Realogy's Response, that these general, cumulative statements were not material to the issues the Panel considered central to this dispute.

The Panel expressly held that Petitioners materially breached the agreements with Respondent "due solely to their failure to meet the Minimum Quota Requirements." Award at 2. With respect to the cure period, the Panel noted,

> Realogy provided significant time for Triomphe to cure the defaults. <u>Triomphe, however, did not make any significant progress toward curing its defaults</u>. If anything, the record establishes that the number of real estate brokerage offices continued to decline and the problems with the existing offices increased.

Award at 4 (emphasis supplied). The proffered declarations would have added nothing material to the Panel's evaluation of the issues, because they did not address either diligence or progress. Each of them described in conclusory fashion the declarants' failure to reach any agreement with Triomphe as of July 2007, well before the December termination, and made no reference to any further meetings or discussions after July. Declarations, Doc. No. 8-5, Par. 2.

Petitioners insist that the declarations would have provided "significant probative force to Mr. Vandenburg's testimony regarding Petitioners' effort to cure," Pet. Reply at 7, but do not explain how. The declarations would not have addressed the Panel's expressed concern that Mr. Vandenburg had no documents to back up his assurance that he had been pursuing a cure "diligently at all times." Award at 4. Neither he nor the rote declarants provided any corroborative documentary evidence (no emails, hotel or airline reservations, credit card receipts, memos, or other correspondence), not even for the months leading up to the termination.

Fundamentally, the declarations established neither diligence nor any objective progress toward curing Petitioners' very serious defaults. As the Panel emphasized, this exclusive licensee of the Coldwell Banker brand for all of Greater and Eastern Europe failed to open any offices at all in twenty of the countries covered by the Agreements, in the eight years that it held

the right to sublicense and expand the brand. The Agreements were properly terminated for breach and failure to cure.

### C. Realogy is Entitled to Its Attorneys' Fees and Expenses.

The Agreements provide that the prevailing party in any legal proceeding between the parties "shall be entitled to recover all costs of such arbitration <u>or other proceeding</u>, including attorneys' fees."[4] Section 22(I) (emphasis supplied). Petitioners argue that the present action falls outside Section 22(I) because it is not an arbitration, but ignore the express provision for a fee award in another proceeding. In this proceeding, Realogy seeks to enforce the terms and conditions of the Agreements, including the finality of their parallel arbitration clauses. Under applicable New Jersey law, Petitioners cannot avoid the unambiguous terms of the fully-integrated agreement they reached. *Kutzin v. Pirnie*, 124 N.J. 500, 507 (N. J. 1991) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and we must enforce those terms as written"); *M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 171 N.J. 378, 396 (N.J. 2002) (terms should be given "their plain and ordinary meaning").

### III. CONCLUSION

The Panel ruled that Realogy properly terminated both the Greater Europe Agreement and the Eastern Europe Agreement as a result of Triomphe's breach of the Minimum Quota Requirements. Award at 4-5. Petitioners failed to meet the statutory service deadline and have also failed to carry the burden of establishing misconduct by the Panel, let alone a level of misbehavior that could overcome the substantial deference that a court accords to this Award. Realogy respectfully urges that the Court dismiss the Petition in its entirety, and award Realogy its attorneys' fees and costs incurred in opposing it.

---

[4] Because the copies of the Agreements annexed as Gardner Aff. Ex. 5 and filed on PACER did not include Section 22[I], complete copies are annexed as Jacoby Supp. Decl. Ex. B.

Respectfully submitted,

Dated: New York, New York
February 4, 2011

By: _____
David Jacoby (DJ 3440)
SCHIFF HARDIN LLP
900 Third Avenue, 23rd Floor
New York, New York 10022
(212) 753-5000

COUNSEL FOR RESPONDENT
REALOGY CORPORATION