UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TRIOMPHE PARTNERS, INC., et al.,

                        Petitioners,                      10 Civ. 8248 (PKC)

       -against-                         MEMORANDUM
                                                      AND ORDER

REALOGY CORPORATION,

                        Defendant.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Petitioners Triomphe Partners, Inc., Triomphe Partners, LLC, and Triomphe Luxembourg, S.a.r.l. (collectively, "petitioner" or "Triomphe") move under the Federal Arbitration Act ("FAA") to vacate an arbitration award rendered in favor of respondent Realogy Corporation, alleging that the arbitrators refused to hear evidence pertinent and material to the controversy.  Realogy argues that the petition should be dismissed as untimely or, alternatively, that the petition be denied because the arbitrators acted properly under the American Arbitration Association's Commercial Arbitration Rules ("AAA Rules") in ruling that the proffered evidence was inadmissible.

BACKGROUND

        This action arises out of two agreements between the parties dated November 5, 1999 and July 24, 2000, under which Triomphe was granted exclusive license to develop and sublicense Coldwell Banker franchised businesses in certain areas of Europe.  The agreements required Triomphe to meet a minimum quota of new franchise locations within specified time periods.  In 2007, relations between the parties broke down over Triomphe's alleged inability to meet the quota, and the failure to cure that breach.  Realogy terminated the

agreements on December 4, 2007, and filed a Demand for Arbitration with the American Arbitration Association in February 2008.  The arbitration was administered by a panel of arbitrators from the International Center for Dispute Resolution, under the AAA Rules.

In the arbitration, Realogy sought a declaration that its termination of the agreements was proper, based primarily upon Triomphe's failure to meet the minimum quota. Triomphe defended and asserted a counterclaim.  Its principal argument was that the agreements did not allow Realogy to terminate so long as Triomphe was in the process of curing the breach.  Wayne Vandenburg, Triomphe's Chief Executive Officer, testified that in 2007 Triomphe had been diligently working to cure the breach, stating that he had entered into negotiations with numerous individuals in various countries in order to open Coldwell Banker branches.  However, the arbitrators questioned the lack of documents supporting this testimony, such as travel records, hotel bills, or email contacts discussing the negotiations. (Tr. 2521-22, 4096-97.)  The tribunal asked Triomphe to produce any such evidence, but Triomphe was unable to do so.  (Award at 4.)  Triomphe instead offered eleven declarations, purportedly from European nationals who had been in discussions or contemplating a transaction with Triomphe, as corroboration for Mr. Vandenburg's testimony.  (Tr. p. 4123–24.)  The declarations each recited that the declarant had been "in discussions" or "contemplating" a transaction with Triomphe as of July 2007, but that in most cases the transaction "was never completed" or "did not proceed."  (Gardner Decl., Ex. 5.)  Realogy objected to the admission of these declarations on two grounds: first, that they were unsworn; and second, that they constituted unfair surprise because the declarations had not been listed as exhibits or exchanged in discovery, nor had the declarants been included on the witness list or named in discovery responses.  (Tr. 4123–43.)  Each declaration was signed "under penalty

of perjury," but did not specify where it was signed or what country's perjury laws would apply. None of the declarations were sworn to before a notary public or a consular or other official. (Id.) The panel sustained Realogy's objection to the declarations, and refused to admit them into evidence.

On August 4, 2010, the panel rendered an award, which was delivered to counsel for the parties by electronic mail the same day in accordance with the parties' agreement. The panel determined that Triomphe had breached the agreements by failing to meet the quota and failing to cure, and therefore Realogy's termination was proper. Triomphe filed a petition to vacate the award on November 1, 2010, and served Realogy on November 5, 2011. (Docket No. 4.) This Court has jurisdiction under 28 U.S.C. § 1332(a), diversity of citizenship.

LEGAL STANDARD

The FAA provides a "streamlined treatment" for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008). Section 10(a) of the FAA sets forth four circumstances in which a court may enter an order vacating an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the

> controversy; or of any other misbehavior by which the rights of
> any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so
> imperfectly executed them that a mutual, final, and definite
> award upon the subject matter was not made.

9 U.S.C. § 10(a).  The party moving to vacate an arbitration award bears the burden of proof and "the showing required to avoid confirmation is very high." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (citing Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997)).

DISCUSSION

    I.    Statute of Limitations

Realogy argues that the petition to vacate should be denied because it was not timely served.  "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12.  The parties agree that the award was delivered by email on August 4, 2010, and that Realogy was served with the petition on November 5, 2010, three months and one day after delivery of the award.  Triomphe argues that this service was timely under Rule 6(a)(1)(A), Fed. R. Civ. P., which directs that for purposes of computing time, the court should "exclude the day of the event that triggers the period."  Alternatively, Triomphe asserts that equitable tolling should apply to the statute of limitations.

Rule 6(a)(1)(A) does not apply to the limitation period.  The Federal Rules of Civil Procedure govern proceedings under the FAA, except where the FAA provides other procedures.  Rule 81(a)(6)(B), Fed. R. Civ. P.  The FAA provides other procedures for the calculation of time, specifically stating that the notice of a motion to vacate must be served

"within three months after the award is filed or delivered." 9 U.S.C. § 12. The limitation period for serving the petition is therefore calculated from the date the award is delivered, not the day after. Colavito v. Hockmeyer Equipment Corp., 605 F. Supp. 1482, 1486–1487 (S.D.N.Y. 1985). This limitation period is strictly construed. See Waveform Telemedia, Inc. v. Panorama Weather North America, 06 Civ. 5270, 2007 WL 678731, *5 (S.D.N.Y. March 2, 2007) (petition to vacate not timely when served three months and three days after the award was delivered); see also Florasynth, Inc. v. Pickholz; 750 F.2d 171, 175 (2d Cir. 1984) ("[A] party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm."). Triomphe's petition, served three months and one day after delivery of the award, is untimely.

Equitable tolling does not apply in this case. First, "there is no common law exception to the three month limitations period on the motion to vacate." Florasynth, 750 F.2d at 175; Waveform, 2007 WL 678731 at *5 ("There are no exceptions to [the three month statute of limitations]."). Second, even if equitable tolling applied to the FAA's statute of limitations, the facts of this case would not warrant it. "As a general matter, a litigant seeking equitable tolling must establish two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010) (quoting Lawrence v. Florida, 549 U.S. 327, 336 (2007)). Equitable tolling applies only in "rare and exceptional circumstances." Harper v. Ercole, ___ F.3d ___, 2011 WL 3084962, at *3 (2d Cir. July 26, 2011) (quotations omitted). The burden is on the petitioner to demonstrate that equitable tolling is appropriate. Boos v. Runyon, 201 F.3d 178, 184–185 (2d Cir. 2000).

Triomphe argues that equitable tolling is appropriate because its process server attempted to serve Realogy on November 4, 2010, the last timely day for service, but that an unidentified Realogy employee refused to accept the service and instead directed the process server to a registered agent for service of process. That agent was served the next day. In making one service attempt on the last timely day, petitioner has not demonstrated that he pursued his rights diligently. See Williams v. U.S. Dept. of Housing and Urban Development, No. 08 Civ. 2804, 2009 WL 742732, *1 (E.D.N.Y. Mar. 20, 2009) ("Plaintiff asserts only that he and his process server were denied access to Defendant's building on the last day on which service could be made. No other attempts to serve are mentioned. This one attempt, on the last day of an extended deadline, can hardly be considered reasonable and diligent.").

Even if a single service attempt on the last day for service could be considered diligent, Triomphe has not demonstrated any extraordinary circumstance which stood in its way and prevented timely filing. "The term extraordinary refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper, 2011 WL 3084962 at *4. Petitioner's evidence of the obstacle to service here is an unsworn email from the process server to petitioner's counsel dated November 4, 2010, which states:

> Realogy Corporation would not accept service at the address provided. They state that we must serve the papers c/o Corporation Service Co., 830 Bear Tavern Road, West Trenton, NJ. My server is sending the documents to their server in that area. It is [too] late to serve today but they will have it attempted tomorrow.

(Gardner Decl., Ex. B.) Even taking this unsworn hearsay statement as true, Triomphe has not demonstrated extraordinary circumstances. There is no indication of what time the initial

service was actually attempted, or what obstacle prevented timely service upon the registered agent.  Triomphe has therefore not demonstrated an obstacle to timely service so severe that reasonable diligence could not have overcome it, and equitable tolling is inappropriate.

> II.   Refusal to hear evidence

Assuming, arguendo, that equitable tolling applied, Triomphe is still not entitled to relief.  Triomphe seeks to vacate the award under 9 U.S.C. § 10(a)(3), arguing that the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy."  To vacate an award on this ground, the "misconduct must amount to a denial of fundamental fairness of the arbitration proceeding."  Fellus v. Sterne, Agee & Leach, Inc., ___ F. Supp. 2d ___, 2011 WL 1218838, *2 (S.D.N.Y. March 29, 2011) (quoting AT & T Corp. v. Tyco Telecomms., Inc., 255 F. Supp. 2d 294, 303 (S.D.N.Y. 2003)); see also Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997) ("Courts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review.").  Arbitrators "enjoy broad discretion on whether to hear evidence and do not need to allow parties to present every piece of relevant evidence," but "need only hear enough evidence to make an informed decision."  Fellus, 2011 WL 1218838 at *2 (quotations omitted).

Petitioner seizes upon the fact that the arbitrators did not explain their reasons for sustaining Realogy's objection to admission of the declarations.  However, the arbitrators were not required to explain the rationale behind their decisions.  "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case."  D.H. Blair & Co., 462 F.3d at

110 (quotations omitted); Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004) ("[A]rbitrators are not required to provide an explanation for their decision." (quotation omitted)).

The arbitrators' rationale is easily inferred from the facts of this case. When Triomphe proffered the declarations, Realogy objected on the grounds that the declarations were unsworn, that they had only been provided to him the day before, that the names of the declarants had not been disclosed in discovery, and that the witnesses were not available for cross-examination. (Tr. 4123–43.) The arbitrators, after confirming that they were working under the AAA Rules, took a short recess and then stated: "The tribunal has considered the offer of eleven documents. The tribunal has considered the objection to this offer. The objection is sustained." (Tr. 4143.) It is a reasonable inference that the arbitrators based their ruling on one or more of the above grounds of objection.

The arbitrators properly sustained the objection on the grounds that the declarations had not previously been disclosed and the declarants were not on the witness list. The arbitrators confirmed that the tribunal was operating under the AAA Rules, which state in pertinent part:

> R-21.  Exchange of Information
>
> a. At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct
>    i. The production of documents and other information, and
>    ii. The identification of any witnesses to be called
> b. At least five business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.
> c. The arbitrator is authorized to resolve any disputes concerning the exchange of information
>       . . . .

>R-31.  Evidence
>
>>a. The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default or has waived the right to be present.
>>
>>b. The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.
>
>. . . .
>
>R-32. Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence
>
>>a. The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission.

AAA Rules.  Triomphe does not dispute that the declarations were not exchanged as exhibits five business days before the hearing, and that the declarants' names were not disclosed on the witness list or in response to a pertinent discovery interrogatory.  The arbitrators' decision to exclude the declarations was well within their discretion. See Global Scholarship Alliance v. Wyckoff Heights Medical Center, No. 09 Civ. 8193, 2010 WL 749839, *2 (S.D.N.Y. Feb. 24, 2010) ("The Arbitrator's decision to exclude Wyckoff's expert witness testimony in light of Respondent's 'acknowledged failure to comply with the terms of [a] Scheduling Order,' was well within her 'broad discretion to determine whether to hear evidence.'" quoting AT&T Corp. v. Tyco Telecomm. (U.S.), Inc., 255 F. Supp. 2d 294, 303 (S.D.N.Y. 2003)).  Arbitrators must be empowered to enforce procedural deadlines:

>The time frames that arbitrators allow under approved schedules for discovery and pre-hearing submissions, deadlines binding on all parties, ordinarily are sufficient to provide them with

>adequate opportunity to present evidence and arguments.  There is no categorical rule, as [petitioner's] argument would hold, requiring arbitrators to consider evidence even if it is proffered after a specified cutoff established under the rules applicable to the arbitration, and against a factual findings by the arbitrators to this effect.  Even judicial proceedings, which are governed by far more rigorous procedural standards, do not compel such a result.  Accordingly, if the arbitrators make a factual and procedural determination that under their governing rules proffered evidence is untimely or not included in approved discovery schedules, absent evidence of misconduct that determination is beyond judicial review.

Commercial Risk Reinsurance Co. Ltd. v. Security Ins. Co. of Hartford, 526 F. Supp. 2d 424, 430 (S.D.N.Y. 2007) (citations omitted).  Although the arbitrators did not make an explicit determination that the proffered evidence was untimely, this rationale can be inferred from Realogy's contemporaneous objection on that ground.  The arbitrators' decision to sustain that objection was well within their discretion, and did not violate fundamental fairness.

Triomphe argues that it was not possible to put the declarations on the witness list, because they "did not exist at the time the exhibit list was created and were only obtained during the course of the hearing." (Pet. Br. at 10.)  Similarly, Triomphe asserts that it could not have perceived the need for this evidence until the Arbitrators indicated that they had doubts as to a witness' credibility.  (Id.)  These arguments were presented to the arbitrators, who nevertheless sustained Realogy's objection.  (Tr. 4128–31, 4135.)  This Court will not second-guess that ruling.  Commercial Risk, 526 F. Supp. 2d at 430.[1]

Finally, Triomphe argues that the tribunal should have postponed the hearing to mitigate any unfair surprise created by the declarations, in lieu of sustaining the objection to their admission, and that failure to do so was error.  Triomphe admits that it did not request an adjournment, but blames this on the tribunal's failure to explain its reasoning for sustaining

---

[1] Triomphe's own counsel described the proffered declarations as "not terribly specific," and offered only for corroboration of a witness' testimony and "for no other purpose."  (Tr. 4129–31.)

Case 1:10-cv-08248-PKC   Document 23   Filed 08/15/11   Page 11 of 11

-11-

the objection. Triomphe was nevertheless on notice of the grounds for Realogy's objection, and had an opportunity to request an adjournment, but did not do so. Triomphe has not cited any authority which suggests that a failure to <u>sua sponte</u> adjourn the hearing is error. The FAA states that a district court may vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, <u>upon sufficient cause shown</u>." 9 U.S.C. § 10(a)(3) (emphasis added). There was no refusal to postpone the hearing because no request was made, nor was there cause shown. The tribunal was under no obligation to <u>sua sponte</u> adjourn the hearing.

### III. Attorneys' Fees

Realogy, in its opposition to Triomphe's motion to vacate the arbitration award, argues that it is entitled to its attorneys' fees and expenses. However, Realogy did not formally move or cross-move for these fees, nor support its claim with contemporaneous billing records or similar evidence. Realogy's request is denied.

### IV. Conclusion

Triomphe's petition to vacate the arbitration award is DENIED, and the petition is dismissed. The Clerk is directed to close the case.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
August 15, 2011